UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GREGORY WARREN,

        Plaintiff,

  v.              9:15-CV-0591
                    (GTS/DEP)

CATHY J. SAWYER, et al.,

        Defendants.

---

APPEARANCES:

GREGORY WARREN
Plaintiff, pro se

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

**I. INTRODUCTION**

Plaintiff commenced this action by filing a pro se civil rights complaint pursuant 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."), Dkt. No. 2 ("IFP Application"). By Decision and Order filed on September 4, 2015, the Court granted plaintiff's IFP application, but found that the complaint was not timely filed, and therefore was subject to dismissal pursuant to 28 U.S.C. § 1915(e). Dkt. No. 4 (the "September 2015 Order").[1] In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id.* at 13. Plaintiff has submitted an amended complaint in

---

[1] The September 2015 Order also dismissed the claims brought pursuant to Section 1983 against the defendants in their official capacities because they were barred by Eleventh Amendment immunity. *Id.* at 9-10.

response to the September 2015 Order. Dkt. No. 13 ("Am. Compl."). For the reasons set forth below, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II. BACKGROUND

Plaintiff's complaint alleged wrongdoing that occurred, if at all, while he was confined at Mohawk Correctional Facility ("Mohawk C.F.") in the Walsh Regional Medical Unit in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. Construed with the utmost of liberality, the Court found plaintiff's original complaint to assert the following claims: (1) Fourteenth Amendment substantive due process and Eighth Amendment medical indifference claims against defendants Sawyer, Rockhill, Evans, McLaughlin, Egan, Harris, House, Nellenbach, Williamson, Antenson, Zaki, Sharma, Fenton, Edwards, Picard,[2] Robertson, Dutch, Farmer, Jackson, Kent, Mulvaney, Lovette, Payant, Burth,[3] Cappola, Bramley, McDougal,[4] Gonyea, and Burdick;[5] (2) a claim that defendants Harris, Rockhill, House, Sawyer, Nellenbach, Williamson, Antenson, Zaki, Sharma, and Fenton created an improper plan of care for plaintiff

---

[2] Defendants Sawyer, Rockhill, Evans, McLaughlin, Egan, Harris, House, Nellenbach, Williamson, Antenson, Zaki, Sharma, Fenton, Edwards, and Picard allegedly denied plaintiff adequate medical care between January 2, 2003 and March 6, 2006, while plaintiff was housed in the C-Wing of Mohawk C.F. Compl. at 8-18. Plaintiff alleges that during a subsequent confinement in the C-Wing, defendants Sawyer, Evans, McLaughlin, Egan, Nellenbach, Williamson, Antenson, Zaki, Sharma, Edwards, and Picard failed to provide him with adequate medical care between May 6, 2010 and June 1, 2010. *Id.* at 23. During his second stay on the C-Wing, defendants Harris, House, Fenton, and Rockhill "either resigned or [were] no longer" working there. *Id.*, n. 24.

[3] Defendants Robertson, Dutch, Farmer, Jackson, Kent, Mulvaney, Lovette, Payant, and Burth allegedly denied plaintiff adequate medical care between March 6, 2006, and October 11, 2009, while plaintiff was housed in the E-Wing of Mohawk C.F., and again beginning on June 1, 2010 when plaintiff was moved back to the E-Wing. Compl. at 18-23.

[4] Defendants Cappola, Bramley, and McDougal allegedly denied plaintiff adequate medical care between October 11, 2009, and May 6, 2010, while plaintiff was housed in the A-Wing of Mohawk C.F. Compl. at 22-23.

[5] Plaintiff alleges that defendants Gonyea and Burdick, along with defendants Sharma, Payant, Zaki, Antonsen, Nellenbach, and Williamson failed to properly supervise the defendants who allegedly violated plaintiff's Eighth Amendment right to adequate medical care. Compl. at 23.

2

on July 30, 2003, which denied plaintiff adequate medical care "by qualified personnel" in violation of the Eighth Amendment; (3) claims that defendants forced medical and psychiatric treatment on plaintiff in violation of his Fourteenth Amendment rights; (4) claims that defendants retaliated against plaintiff for filing grievances and complaints in violation of the First and Fourteenth Amendments; (5) claims that defendants Harris, Zaki, Dutch, Olney, Burdick, Fischer, Wright, and Diaz denied plaintiff adequate nutrition and deliberately fed him food that he was allergic to in violation of the Eighth Amendment; (6) claims that defendant Lovette denied plaintiff freedom of association on October 2, 2006 and April 4, 2007, and access to the courts on April 4, 2007, in violation of the First Amendment; (7) Eighth Amendment conditions of confinement claims against defendants Harris, Sawyer, Robertson, and Burth arising in 2003 and 2006; (8) Eighth Amendment medical indifference and conditions of confinement claims against defendants Zaki and Harris for denying plaintiff lotion for his dry skin;[6] (9) Eighth Amendment medical indifference claims against defendants Zaki, Beilein, Stewart, Sullivan, Goord, Fischer, Burdick, and Dutch for denying diagnostic tests; (10) Fourteenth Amendment equal protection claims; (11) claims that the defendants violated plaintiff's rights under the ADA and the Rehabilitation Act; (12) claims that defendants LaBella-Fischer, Paulikowski, Gonyea, and Bellamy violated plaintiff's First Amendment right of access to the courts and right to petition the government by interfering with his mail in 2011; and (13) conspiracy claims against defendants Harris, Rockhill, House, Sawyer, Nellenbach, Williamson, Antenson, Zaki, Sharma, Fenton, Edwards, Picard, Robertson, Dutch, Farmer, Jackson, Kent, Mulvaney, Lovette, Cappola, Bramley, and

---

[6] Plaintiff alleges that defendant Harris informed plaintiff on March 2, 2006, that defendant Zaki "stopped [plaintiff's] vitamin E lotion." Compl. at 33.

3

McDougal.[7] *Id.*

After thoroughly reviewing all of plaintiff's allegations and assuming them to be true, in accordance with 28 U.S.C. § 1915(e)(2)(B), the Court dismissed the Section 1983 claims against the defendants in their official capacities as barred by Eleventh Amendment immunity and dismissed all claims as untimely filed. September 2015 Order.[8]

## III. THE AMENDED COMPLAINT

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e) was discussed at length in the September 2015 Order and will not be restated here. *See* September 2015 Order at 2-6. Taking into account plaintiff's pro se status, the Court construes the allegations in plaintiff's amended complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

The Court notes that, apart from some minor variations, the amended complaint is virtually identical to the original complaint, and the causes of action set forth therein are the same causes of action set forth in the original complaint.[9] *Compare* Compl. *with* Am. Compl.

---

[7] Plaintiff claims that defendants Harris, Rockhill, House, Sawyer, Nellenbach, Williamson, Antenson, Zaki, Sharma, Fenton conspired to create an impermissible plan of treatment for plaintiff on July 30, 2003, and that defendants Edwards, Picard, Robertson, Dutch, Farmer, Jackson, Kent, Mulvaney, Lovette, Cappola, Bramley, and McDougal agreed to enforce the plan in 2006, 2009, and 2010. Compl. at 9, 18, 22-23.

[8] As noted in the September 2015 Order, "dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that the plaintiff submits. *Messeroux v. Maimonides Medical Ctr.*, No. 11-CV-5343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013) (citing *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (noting that, for purposes of an initial review under 28 U.S.C. § 1915, a court may find that a complaint is based on an indisputably meritless legal theory if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint")." September 2015 Order at 10. Nonetheless, in light of *Abbas v. Dixon* 480 F.3d 636, 640 (2d Cir. 2007), the Court afforded plaintiff with the opportunity to demonstrate that his claims were timely. September 2015 Order at 12.

[9] *See* Part II, supra (delineating causes of action).

4

Plaintiff seeks monetary damages. Am. Compl. at 48-49. For a complete statement of plaintiff's claims, refer to the amended complaint. In conjunction with filing his amended complaint, plaintiff submitted an Affirmation (Dkt. No. 14), a Memorandum of Law (Dkt. No. 15), and several other submissions (Dkt. No. 13) in support of his argument that his claims are not time-barred.

The following facts are set forth as alleged by plaintiff in his Affirmation. Dkt. No. 14 (the "Plaintiff's Aff."). Plaintiff arrived at the Daughters of Jacob Nursing and Rehabilitation Center (the "Rehabilitation Center") on May 10, 2012. *Id.* at 2. Plaintiff is bed ridden and requires assistance with all of his needs. *Id.*; *see also* Dkt. No. 13-2. On February 3, 2015, plaintiff emailed his completed original complaint for this action to Deborah Moss - who is not a member of the Rehabilitation Center staff - asking that she make sufficient copies of the complaint so that he could serve the 43 defendants named in the complaint. Plaintiff's Aff. at 2; *see also* Dkt. No. 13-3. The Rehabilitation Center would not make the copies for plaintiff. Plaintiff's Aff. at 2. Plaintiff told Moss that he needed the copies by February 18, 2015 - the date that he signed the complaint - and she said that she would make the copies in that time frame. *Id.* Plaintiff contacted Moss on February 25, 2015, and March 16, 2015, telling her that if she had not made the copies yet, he would have to re-date the complaint. *Id.* at 3. Plaintiff changed the date on the complaint to April 1, 2015, and emailed it to Moss. *Id.* On March 25, 2015, plaintiff contacted Moss by text; Moss told plaintiff that she had made ten copies. *Id.* On April 1, 2015, plaintiff again texted Moss requesting the status of his copies; Moss said that she was almost done, and asked plaintiff what the "due date" for the copies was. *Id.* Plaintiff responded that since the complaint is dated May 1, 2015, he was "on borrowed time. . . in A.S.A.P. Mode." *Id.* On May 3, 2015, Noel Mojica, a nurse at the

Rehabilitation Center gave plaintiff access to a portable copier and plaintiff began making copies of his complaint. *Id.*; *see also* Dkt. No. 13-6. On May 6, 2015, Moss advised plaintiff that she had copied the wrong documents and would not be able to provide him with any copies. Plaintiff's Aff. at 3. On May 8, 2015, plaintiff finished making the copies of his complaint and asked Mojica to mail them to the Court, but Mojica told plaintiff that he "could not do mail same thereat." Dkt. No. 13-6. On May 9, 2015, Mojica took the copies of the complaint to the security desk of the Rehabilitation Center and the U.S. Post Office "took possession" of them. *Id.* Because it was a Saturday, next day mail was unavailable. Plaintiff's Aff. at 3. In light of the foregoing, plaintiff claims that "the delay in filing was not due to lack of diligence, will or dedication" but was the result of plaintiff being "bed ridden, indigent . . . [and] confined to a nursing home lacking the ability or resources to file the [complaint] any sooner." *Id.* at 4.

Plaintiff admits that the statute of limitations for a Section 1983 action is three years and that the three-year deadline for him to file this action expired on May 10, 2015. Dkt. No. 13-1 ("Memorandum of Law") at 19. The Court notes that because May 10, 2015, was a Sunday, plaintiff had until Monday, May 11, 2015, to file his complaint. *See* Fed. R. Civ. P. 6(a)(1)(C) (extending a period that expires on Sunday until the end of the next day that is not legal holiday).[10] Although plaintiff's complaint was not filed with the Court until May 14, 2015, *see* Dkt. No. 1, plaintiff argues that his claims should not be considered time-barred because: (1) the prison mailbox rule should apply to citizens confined to medical facilities, Memorandum of Law at 19-21; (2) plaintiff should be found to be in "substantial compliance with the statute," *id.* at 21; and (3) defendants' actions are part of a continuing violation, *id.* at 22.

---

[10] Monday, May 11, 2015, was not a legal holiday. *See* Fed. R. Civ. P. 6(a)(6).

6

### A. Eleventh Amendment Immunity

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought, unless the state has consented to filing such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Quern v. Jordan*, 440 U.S. 332, 343-45 (1979) (It is well-settled that Congress did not abrogate states' immunity through Section 1983); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977) (New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest. *Richards v. State of New York Appellate Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Cory v. White*, 457 U.S. 85 (1982) and *Alabama v. Pugh*).

Accordingly, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against the New York State Department of Corrections and Community Supervision ("DOCCS") or against the individual defendants in their official capacities, *see* Am. Compl. at 2, those claims are barred by the Eleventh Amendment and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. Timeliness of the Claims

The "applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). A Section 1983 cause of action accrues "when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Covington v. City of N.Y.*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (citing *Woods v. Candela*, 13 F.3d 574, 575 (2d Cir. 1994)). "Thus,

7

in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful." *Id.* (internal quotation marks and citation omitted). The same three-year statute of limitations applies to plaintiff's claims brought under the ADA and the Rehabilitation Act. *Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992); *see also Griffin v. Doe*, 71 F. Supp. 3d 306, 312 (N.D.N.Y. 2014) (Plaintiff's constitutional, ADA, and Rehabilitation Act claims are subject to a three-year statute of limitations period from the date the claim accrued.).

Plaintiff's original complaint was filed on May 14, 2015. Dkt. No. 1. All of plaintiff's claims arose at the latest on or before May 10, 2012, when plaintiff was released from Mohawk C.F.,[11] *see generally* Am. Compl., thus, as plaintiff was previously advised, his claims are subject to dismissal as untimely filed unless he is able to demonstrate that the limitations period was tolled, or that his claims are otherwise timely. September 2015 Order at 10-12.

### 1. The Prison Mailbox Rule

Plaintiff argues that he should be entitled to invoke the prison mailbox rule because he is a bedridden patient confined to a medical facility. Memorandum of Law at 19-21. Under the prison mailbox rule, the date of filing is deemed to be the date that a prisoner-plaintiff delivers his complaint to a prison guard for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).

Plaintiff was not a prisoner when he filed this action in May, 2015, having been released from incarceration on May 10, 2012. *See* n.10, *supra*. Nonetheless, plaintiff argues that the prison mailbox rule should apply to him because, like the prisoner-plaintiff in *Houston*,

---

[11] According to information publically available on the DOCCS website, plaintiff was released from Mohawk Correctional Facility on May 10, 2012. *See* http://nysdoccslookup.doccs.ny.gov/ (information for Inmate Gregory Warren, DIN # 94-A-8617) (last visited Apr. 8, 2016).

he had to depend on the staff at the Rehabilitation Center to mail out his complaint for him. Memorandum of Law at 19-21. Contrary to the analysis in *Houston*, plaintiff has alleged no facts to plausibly suggest that staff at the Rehabilitation Center, unlike prison officials, had any "incentive to delay" the filing of plaintiff's complaint. *See, e.g. Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001) (holding that an inmate who gave a document to his sister to forward to the court for filing could not benefit from the prison mailbox rule because unlike prison officials, the sister had no "'incentive to delay'" forwarding the document to the court clerk). Indeed, in this case, when plaintiff asked nurse Mojica, a member of the Rehabilitation Center staff, for assistance in copying his complaint, nurse Mojica promptly obtained access to a copier for plaintiff, hardly an act demonstrating "incentive to delay." Moreover, unlike the situation addressed in *Houston*, the delay in this case did not occur as a result of dilatory conduct on the part of the staff at the Rehabilitation Center. Instead, plaintiff waited almost two and one half years after he was released from incarceration to forward his complaint to Moss so that she could make copies of the complaint for him.[12] Plaintiff's Aff. at 2.

Moreover, several courts, including this one, have stated that the prison mailbox rule does not apply to non-prisoner litigants. *See Pickering-George v. Cuomo*, No. 1:10-CV-0771 (GTS/DEP), 2011 WL 1832560, at *4 n.7 (N.D.N.Y. May 12, 2011) (*Houston v. Lack*'s prison mailbox rule does not apply to non-prisoner litigants); *Cowden v. U.S. Dep't of Labor.*, No. 04-CV-0053, 2005 WL 1691036, at *8 n.10 (E.D. Ky. July 18, 2005) (same); *accord Gabriel v. United States*, No. 14-CV-3022, 2015 WL 1651828, at *1 (D. Colo. Apr. 10, 2015). In light of the foregoing, the Court finds that because plaintiff was not a prisoner at the time he filed this

---

[12] Even if the Court were to find that the prison mailbox rule applied - which it does not - Moss would not qualify as an agent of the Rehabilitation Center. *See Knickerbocker*, 271 F.3d at 37 (the prison mailbox rule is not implicated when an inmate delivers his or her documents to a person outside of the prison facility for mailing).

9

action, he is not entitled to the benefit of the prison mailbox rule. Accordingly, plaintiff's complaint was filed when received by the Clerk of the Court on May 14, 2015, and unless some other exception to the statute of limitations applies, is untimely filed.

In the alternative, plaintiff asks the Court to consider this action timely-filed based upon his "substantial compliance with the statute." Memorandum of Law at 21. Construed liberally, plaintiff appears to argue that he substantially complied with the requirement for commencing an action in federal court by "mailing" his complaint to the court before the statute of limitations expired. Plaintiff provides no persuasive authority, and the Court can find none, which would permit plaintiff's claims to be considered timely on this basis. In fact, it is clear that "mailing" does not amount to substantial compliance with the requirements to commence an action in federal court. *See* Fed. R. Civ. P. 3 (In federal court, "[a] civil action is commenced by filing a complaint with the court."); Fed. R. Civ. P. 5(d) ("A paper is filed by delivering it . . . to the clerk; or . . . to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk."); *see also* Practice Commentary to Fed. R. Civ. P. 3 ("[U]nder Rule 5(d), the complaint is filed when received by the clerk (not, for example, when it is placed in the mail)."); *United States v. White*, 980 F.2d 836, 845 (2d Cir. 1992) (holding that filing requires delivery of papers into the actual custody of the Clerk of the Court); *McIntosh v. Antonino*, 71 F.3d 29, 36 (1st Cir. 1995) (same); *Koch v. Ricketts*, 68 F.3d 1191, 1192 (9th Cir. 1995) (same); *United States v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (same); *Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986) ("Filings reaching the clerk's office after a deadline are untimely, even if mailed before the deadline."); *Haney v. Mizell Memorial Hospital*, 744 F.2d 1467, 1472 (11th Cir. 1984) (same). In this case, plaintiff's complaint was received by the Clerk of this Court on May 14, 2015, thus it was officially filed after plaintiff's statute of limitations expired.

Plaintiff's argument that he substantially complied with the requirements to commence an action by mailing the complaint before the statute of limitations expired is without merit and is at best an attempt to recast his argument that he should be entitled to the benefit of the prison mailbox rule.

### 2. The Continuing Violation Doctrine

Since plaintiff's original complaint was filed with this Court on May 14, 2015, *see* Dkt. No. 1, plaintiff's claims can only be timely for wrongful conduct dating back to May 14, 2012. Here, plaintiff's claims accrued no later than May 10, 2012, the date he was released from Mohawk C.F., and most occurred much earlier than that. Plaintiff argues, however, that the earlier claims may be timely based upon the continuing violation doctrine.

"The continuing violation doctrine is an exception to the normal knew-or-should-have-known accrual date. When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (citations and punctuation omitted). "To assert a continuing violation for statute of limitations purposes," the plaintiff must allege (1) "an ongoing policy" and (2) for each defendant, "some acts in furtherance of the policy within the relevant statute of limitations period." *Shomo*, 579 F.3d at 179, 182-84. The Supreme Court makes clear that the continuing violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002). Moreover, "[a] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). Additionally, "[c]haracterizing defendants' separate

11

wrongful acts as having been committed in furtherance of a conspiracy or as 'a series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980). "The continuing violation doctrine is heavily disfavored in the Second Circuit." *Levine v. McCabe*, 357 F. Supp. 2d 608, 614 (E.D.N.Y. 2005) (citing *Falinski v. Kuntz*, 38 F.Supp.2d 250, 257 (S.D.N.Y.1999) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.'") (internal citation omitted)), *aff'd*, 327 F. App'x 315 (2d Cir. 2009).

Having reviewed plaintiff's allegations and affording them great deference in light of his pro se status, the Court finds that plaintiff has not alleged facts that even suggest that the continuing violation doctrine is applicable to his claims. Plaintiff's conclusory assertions that all of the actions of the defendants were taken pursuant to a policy does not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Moreover, even assuming *arguendo* that plaintiff could allege a policy of deliberate indifference prior to his release from Mohawk C.F. on May 10, 2012, any continuing violation claim still must fail because plaintiff alleges no "non-time-barred acts taken in furtherance of that policy" by any defendant. *Shomo*, 579 F.3d at 182; *see also Whitfield v. O'Connell*, No. 09 Civ.1925, 2010 WL 1010060, at *5 (S.D.N.Y. Mar. 18, 2010) (stating a successful continuing violation claim requires "an ongoing policy of deliberate indifference to [a plaintiff's] serious medical needs" and "for each defendant, some acts in furtherance of the policy within the relevant statute of limitations period" (citation and internal quotation marks omitted)); *Crenshaw v. Syed*, No. 9:10-CV-0244 (GLS/GHL), 2011 WL 2975687, at *4 (N.D.N.Y. Mar. 8,

12

2011) ("[A] plaintiff hoping to invoke the continuing violation doctrine must allege that the defendant committed a wrongful act within the statute of limitations period."), *adopted* 2011 WL 2975775 (N.D.N.Y. Jul. 21, 2011); *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) ("[I]n order for the continuing violation doctrine to apply, plaintiff need[s] to show that [the defendant] committed at least one wrongful act within the statutory time period."). In this case, plaintiff's allegations against the defendants all occurred on or before May 10, 2012, the date that he was released from Mohawk C.F., and most of the specific misconduct tied to the individual defendants occurred well before May 10, 2012. *See* Am. Compl. at ¶¶ 48-174 (asserting alleged misconduct between January 2, 2003 and June 1, 2010); *id.* at ¶¶ 181-230 (asserting alleged misconduct between March 18, 2002 and March 1, 2012); *id.* at ¶¶ 237-244 (asserting alleged misconduct between April 5, 2005 and March 2, 2006); *id.* at ¶¶ 247-264 (asserting alleged misconduct between January, 2008 and September 16, 2011), and *id.* at ¶¶ 271-284 (asserting alleged misconduct between August 22, 2011 and October 26, 2011). Therefore plaintiff cannot benefit from the continuing violation doctrine.[13]

### 3. Statutory or Equitable Tolling

While federal law determines when a Section 1983 claim accrues, state tolling principles inform the analysis of whether the limitations period has been tolled, unless those rules would "'defeat the goals'" of Section 1983. *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). The Second Circuit has also recognized that under certain compelling circumstances equitable tolling may be invoked

---

[13] Even assuming *arguendo* that the Court were to give plaintiff the benefit of the prison mailbox rule, as plaintiff suggests, he could still not benefit from the continuing violation doctrine. Under that scenario, his complaint would be deemed filed on May 8, 2015, the day he allegedly mailed it, yet he alleges no facts to plausibly suggest that a single defendant committed a wrongful act on or after May 8, 2012. Plaintiff's conclusory allegation that the alleged policy of discrimination against him continued until his release from Mohawk C.F. on May 10, 2012, does not amount to a discrete wrongful act by any defendant.

13

to avoid dismissal of an otherwise stale claim based upon a governing statute of limitations. *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983).

Under New York law, the statute of limitations period may be extended "[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues." N.Y. C.P.L.R § 208. "Physical ailments, however, do not suffice to invoke the New York tolling provisions." *Baroor v. New York City Dep't of Educ.*, 362 F. App'x 157, 159-60 (2d Cir. 2010) (citing *Eisenbach v. Metro. Transp. Auth.*, 97 A.D.2d 808 (N.Y. App. Div. 1983)); *see also Brown v. Rochester Gen. Hosp.*, 292 A.D.2d 855, 738 N.Y.S.2d 803 (4th Dep't) (claims of quadriplegic plaintiff without mental disability not tolled under infancy toll), *leave denied*, 98 N.Y.2d 607 (2002)*; McBride v. Cnty. of Westchester*, 211 A.D.2d 792, 794 (2d Dep't 1995) (plaintiff who became blind denied insanity toll due to absence of evidence plaintiff was unable to function in society*).*

Additionally, equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks omitted). This Circuit has been clear that "[a]s a general matter, we set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011); *see also Nat'l R .R. Passenger Corp.*, 536 U.S. at 113 (stating the equitable tolling doctrine is "to be applied sparingly"). The plaintiff bears the burden of establishing equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). Plaintiff alleges that he has "significant disabilities" and "severe physical impairments" dating back to before his incarceration at Mohawk C.F. Am. Compl. at 2. Plaintiff has not however alleged facts plausibly suggesting that "extraordinary circumstances" prevented him from filing his

14

complaint on time.[14] Nor has plaintiff demonstrated that he acted with reasonable diligence in bringing his claims, many of which date back to 2003. Indeed, he waited more than two and one half years after his release from Mohawk C.F. to complete his complaint. Plaintiff has not met his burden to qualify for equitable tolling.

## IV. CONCLUSION

In light of the foregoing, plaintiff's complaint is subject to dismissal in its entirety. Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend.[15] Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman*

---

[14] In fact, despite his physical disabilities, plaintiff was a frequent litigator in both state and federal court while he was in the custody of DOCCS and housed in the Walsh Regional Medical Unit suffering from the same physical disabilities that he currently suffers from. *See Warren v. Fischl*, No. 2:15-CV-2829, Dkt. No. 5 (Memorandum & Order) at 3-5, (E.D.N.Y. filed May 12, 2015) (listing multiple court actions brought by plaintiff to pursue his legal rights).

[15] *Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04- CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.*, No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion if movant has repeatedly failed to cure deficiencies in pleading).

*v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted).

For all of the reasons set forth herein and in the September 2015 Order, and because plaintiff has already had one opportunity to amend his claims, this action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) as not timely filed.

**WHEREFORE**, it is hereby

**ORDERED** that the Section 1983 claims against the New York State Department of Corrections and Community Supervision and against the defendants in their official capacities are **DISMISSED with prejudice** because they are barred by Eleventh Amendment immunity; and it is further

**ORDERED** that this action is **DISMISSED with prejudice** in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) as untimely filed. The Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: April 15, 2016
Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge